IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MONASTIERO,<br><br>        Plaintiff,<br>  v.<br>APPMOBI, INC.,<br><br>        Defendant.<br>                                  / | No. C 13-05711 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS AND PURSUANT TO RULE 12(b)(3)** |

Currently before the Court is a motion to dismiss filed by defendant appMobi, Inc. Docket No. 13. This motion is scheduled for hearing before the Court on February 7, 2014. Pursuant to Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court DENIES defendant's motion to dismiss.

**BACKGROUND**

Plaintiff Joseph Monastiero is and was at all times relevant herein a resident of California and is a former employee of defendant appMobi, a corporation headquartered in Lancaster, Pennsylvania. Complaint ¶¶ 1-2. Monastiero began working as Vice President of Business Development for appMobi

in September, 2010. *Id.* ¶ 8. Under the terms of Monstiero's employment agreement, he was entitled to a 10% commission fee on direct

sales and a 5% commission on sales made by others at appMobi. *Id.* Monastiero's employment agreement included a governing law clause that specified the law of the Commonwealth of Pennsylvania as the controlling law and the Court of Common Pleas of Lancaster County, Pennsylvania as the forum of exclusive jurisdiction and venue for all matters arising under the contract. Abadir Decl. Ex. A, Employment Agreement ¶ 16. The relevant term in Monastiero's employment agreement states:

> 16.   <u>Law Governing</u>. This Agreement shall be governed by and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to its laws of conflicts of laws. The Court of Common Pleas of Lancaster County, Pennsylvania, shall have exclusive jurisdiction and venue of all matters arising hereunder. In such proceedings, Employee and the Employer each hereby consents to such jurisdiction and venue and waives any right to a jury trial.

Monastiero's employment with appMobi terminated in May, 2012; he signed a termination agreement with appMobi on May 31, 2012. Termination Agreement. This agreement also included a governing law provision that specified the law of Pennsylvania as the controlling law and the Court of Common Pleas of Lancaster County, Pennsylvania, as the exclusive jurisdiction and venue of all matters arising under the agreement. Abadir Decl. Ex. B, Termination Agreement ¶ 8. The pertinent clause in Monastiero's termination agreement reads:

> 8.   GOVERNING LAW
> This agreement shall be governed by and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to its laws of conflicts of laws. The Court of Common Pleas of Lancaster County, Pennsylvania, shall have exclusive jurisdiction and venue of all matters arising hereunder. Both parties hereby consent to such jurisdiction and venue and waived any right to a jury trial.

On November 6, 2013, Monastiero filed suit against appMobi in Alameda County Superior Court in California for breach of contract, compensatory and general damages, and penalties as provided by California Labor Code § 203. Complaint pgs. 3-5. According to Monastiero, appMobi breached the employment and termination agreements by failing to pay him commission fees related to a transaction between appMobi and the INTEL corporation. Complaint ¶¶ 13-16.

On December 10, 2013, appMobi removed Monastiero's case to this Court. Docket No. 2. Three days later, appMobi filed a motion to dismiss the case for *forum non conveniens* or pursuant to

Federal Rule 12(b)(3). Docket No. 13. appMobi's motion appears to be an effort to enforce the forum-selection clause contained in Monastiero's employment and termination agreements.

**LEGAL STANDARD**

Forum selection clauses are presumptively valid, "and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Murphy v. Schneider National Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003). "The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15).

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[1] *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 134 S.Ct. 568, 580 (2013). Rule 12(b)(3) is "not [the] proper mechanism[] to enforce a forum-selection clause . . . . § 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms." *Id*.

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for improper venue. Venue is generally proper in a district where the defendant resides. *See* 28 U.S.C. § 1391(a). Because a 12(b)(3) motion has a dramatic effect on plaintiff's forum choices, the trial court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy*, 362 F.3d at 1138-39.

**DISCUSSION**

**1.    Enforceability of the Forum-Selection Clause**

appMobi argues that Monastiero filed suit in California Superior Court contrary to the venue and forum-selection clauses set forth in his employment and termination agreements, and that he is obligated

---

[1] "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 134 S.Ct. 568, 580 (2013).

3

1 to litigate all disputes arising out of these agreements in the Court of Common Pleas in Lancaster,
2 Pennsylvania. Motion pg. 6. Monastiero maintains that the forum-selection clause appMobi now seeks
3 to enforce is invalid and unenforceable. Opp. pg. 5. As an initial matter, the Court must determine the
4 enforceability of the forum-selection clause before making a determination as to defendant's motion to
5 dismiss.

6 As explained by the Supreme Court in *Bremen*, there are three reasons enforcement of a forum-
7 selection clause would be unreasonable: 1) "if the inclusion of the clause in the agreement was the
8 product of fraud or overreaching"; 2) "if the party wishing to repudiate the clause would effectively be
9 deprived of his day in court were the clause enforced"; and 3) "if enforcement would contravene a
10 strong public policy of the forum in which suit is brought." *Bremen*, 407 U.S. at 12-13; *Richards v.*
11 *Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998). As the party challenging the clause,
12 Monastiero has the "heavy burden of proof" to "clearly show that enforcement would be unreasonable
13 or unjust." *Murphy*, 362 F.3d at 1140.

14 First, the Court considers whether the inclusion of the forum-selection clause "was the product
15 of fraud or overreaching." *Bremen*, 407 U.S. at 12-13. In the context of employment agreements, the
16 Ninth Circuit has held that district courts may take into account power differentials that exist between
17 the contracting parties, as well as the educational background and business expertise of the party
18 challenging the clause. *Murphy*, 362 F.3d at 1140-41; *Spradlin*, 926 F.2d at 868-69.

19 Monastiero has not alleged that the forum-selection clause was included in the agreements as
20 a result of fraud. However, Monastiero does argue that appMobi, the drafter of the agreements, failed
21 to point out or explain the forum-selection clause to him and that a power imbalance existed between
22 him, an individual employee, unrepresented by an attorney, and appMobi. Opp. pgs. 6-7. Taking
23 Monastiero's allegations as true, the Court concludes that there is no evidence of overreaching beyond
24 Monastiero's assertions.

25 Although Monastiero was not represented by an attorney when he signed the termination
26 agreement, his signature and date indicates that he waited two weeks between May 16, 2012, when the
27 agreement was tendered to him, and May 31, 2012, when he signed the agreement. Additionally, the
28 terms of the termination agreement state that Monastiero had twenty-one days from the time he received

4

the agreement to consider whether to sign it and would have an additional seven days after the date of execution to change his mind and revoke the agreement. *Id*. The agreement specifically stated: "We recommend that you consult with your attorney regarding the legal effect of this Agreement." *Id*. While Monastiero may not have been represented by an attorney when he received the termination agreement, he certainly had time to (and was so advised) consult an attorney.

As to the educational background and business expertise of the challenging party, Monastiero's complaint alleges that he "engaged in multiple communications with INTEL Corporation and arranged and attended high level business meeting[s] between senior management of APPMOBI and INTEL Corporation." Complt. ¶ 10. It further states that Monastiero "was the procuring cause of the sale to INTEL Corporation" and that this transaction was "a direct and proximate result" of his efforts as Vice-President of Business Development. Complt. ¶ 11. Given his assertions of his high-level involvement in the Intel business deal, the Court cannot find that Monastiero was an unsophisticated businessman. Monastiero's assertions, even accepted as true, are insufficient "to overcome the strong presumption in favor of enforcing forum-selection clauses." *Murphy*, 362 F.3d at 1141.

Second, the Court must evaluate whether "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced." *Bremen*, 407 U.S. at 12-13. Here, the Court may consider the challenging party's "financial ability to bear [the] costs and inconvenience of litigating in the forum selected by the contract." *Murphy*, 362 F.3d at 1140-41 (quoting *Spradlin*, 926 F.2d at 869) (alteration in original) (internal quotation mark omitted). Monastiero does not dispute that if the forum-selection clause were enforced, he would still be able to litigate in Pennsylvania court. Rather, Monastiero argues that the financial burden and travel required will make the pursuit of his claims in Pennsylvania extraordinarily difficult. Opp. pg. 8; Monastiero Decl. ¶ 8. Monastiero is presently unemployed. He maintains that he will have to spend thousands of dollars to find new counsel near Pennsylvania, as well as pay for travel, lodging, and meal costs in order to attend court proceedings. Opp. pg. 8; Grover Decl. ¶¶ 7, 9. He further states that he will be required to pay expenses associated with travel for non-party witnesses, since he will have no legal ability to compel California witnesses to appear in Pennsylvania court. Opp. pg. 8. This will be significant, since his employment took place in California and the major claim asserted here – the commission on the Intel contract –

5

1 involves primarily California and Oregon witnesses. Considering all of Monastiero's arguments, and
2 recognizing that Monastiero will encounter additional financial costs to litigate in Pennsylvania, the
3 Court finds that Monastiero has provided compelling evidence that enforcement of the forum-selection
4 clause "would be unreasonable or unjust." *Murphy*, 362 F.3d at 1140.

Finally, the Court considers whether enforcement of the forum-selection clause "would contravene a strong public policy of the forum in which suit is brought." *Bremen*, 407 U.S. at 12-13. Monastiero argues that enforcement of the forum-selection clause violates California's public policies. Opp. pgs. 5-12. Monastiero first points to California's public policy against unconscionable contract agreements, particularly in the employment context, citing California Civil Code § 1670.5. Under California law, "unconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000) (quoting *A & M Produce Co., v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Cal. App. 1982)) (internal quotation marks omitted). Monastiero contends the agreements at issue are procedurally unconscionable due to the uneven bargaining power between the parties and substantively unconscionable because the forum-selection of Pennsylvania is one-sided and favors only appMobi. Opp. pgs. 5-10.

The Court does not find that Monastiero was subjected to "oppression" or "surprise" in either contract. Taking Monastiero's allegations as true, the forum-selection clauses were not specifically pointed out to him, but they were also not hidden. The forum-selection clause contained in Monastiero's employment contract was the last paragraph on the second-to-last page of the agreement. Abdair Decl. Ex. A, Employment Agreement pg. 9. The words "Law Governing" are underlined and Monastiero initialed the page directly below the forum-selection clause. *Id*. Similarly, the forum-selection clause in the termination agreement stated, at the top of the page, "GOVERNING LAW" in uppercase letters and Monastiero signed the agreement on the same page as the clause. Abdair Decl. Ex. B, Termination Agreement pg. 4. Monastiero was not subjected to "surprise" from a hidden contractual term.

Next, Monastiero alleges that the forum-selection clause is one-sided in favor of appMobi. Opp. pgs. 7-8. Specifically, Monastiero argues that although the transaction with Intel occurred in California,

6

1 where nearly all of the evidence and witnesses also are, he will be forced to litigate in Pennsylvania, 2 which is thousands of miles away. *Id*. pg 8. Monastiero contends that the cost to litigate in 3 Pennsylvania severely disadvantages him and effectively prevents him from pursing his claims. *Id*. pgs. 4 7-8. In support of his position, Monastiero relies upon case law discussing the enforceability of 5 arbitration agreements, when presented to employees in a "take it or leave it" fashion. *See Armendariz*, 6 24 Cal. 4th at 113-14; *see also Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909 (Cal. App. 2001). 7 Monastiero's case is factually distinct from his cited cases involving arbitration agreements. Unlike the 8 plaintiffs in *Bolter*, where the defendant knew the plaintiffs were not in a position to dispute or negotiate 9 an offer, Monastiero was not presented his employment agreement in a "take it or leave it" manner. *See* 10 *Bolter*, 87 Cal. App. 4th at 907. And in contrast to the plaintiffs in *Armendariz*, Monastiero's contract 11 included the option of litigating, rather than the complete elimination of litigation options through 12 mandatory employment arbitration. *See Armendariz*, 24 Cal. 4th at 114-15. The Court does not find 13 that Monastiero was subjected to "unfair surprise" or "unequal bargaining power." *A & M Produce Co.*, 14 135 Cal. App. 3d at 489. Accordingly, the Court cannot find that enforcement of the forum-selection 15 clause would violate California's public policy against unconscionable employment terms.

16 Monastiero next argues that enforcement of a forum-selection clause that limits a California 17 employee's ability to pursue wage claims violates California's public policies protecting the payment 18 of wages. Opp. pg. 10. The Court may not enforce the forum-selection clause if it contravenes a strong 19 public policy of California, the forum in which the suit was initially brought. *See Holland Am. Line Inc.* 20 *v. Wartsila North Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007).

21 As described by the California Supreme Court, "[t]he public policy in favor of full and prompt 22 payment of an employee's earned wages is fundamental and well established. Delay of payment or loss 23 of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to 24 others, and, in many cases may make the wage-earner a charge upon the public." *Smith v. Superior* 25 *Court*, 39 Cal. 4th 77, 82 (Cal. 2006) (quoting *Kerr's Catering Serv. v. Dept. of Indust. Relations*, 57 26 Cal. 2d 319, 326 (Cal. 1962)) (internal quotation marks omitted). Sections 201 and 203 of the California 27 Labor Code encompass "this fundamental public policy regarding prompt wage payment." *Id*.

28

7

According to Monastiero, while he was employed by appMobi, he and three other California employees worked in a Northern California office in appMobi's name. Monastiero Decl. ¶ 2. Monastiero also claims that he lived in Northern California for all times while he was employed by appMobi. *Id.* ¶ 2. Additionally, Monastiero specifies that his claims against appMobi "are based on its failure to pay me for the work that I performed for AppMobi [sic] on a deal with Intel Corporation. The work that I performed on the Intel deal occurred only in California and Oregon, where Intel also has offices." *Id.* ¶ 7. Taking Monastiero's allegations as true, the Court finds that he was a California employee of appMobi with California wage claims against appMobi and that enforcement of the forum-selection clause would contravene California public policy. The governing law provisions contained in Monastiero's contract agreements designate the law of Pennsylvania; thus, enforcement of the forum-selection clause will prohibit Monastiero from bringing his California wage claims in Pennsylvania court, and will "materially diminish" his rights as a California resident, in violation of California public policy. *See America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 13 (Cal. App. 2001). The Court finds that enforcement of the forum-selection clause would contravene California public policy, and would be "unreasonable under the circumstances." *Bremen*, 407 U.S. at 10; *Murphy*, 362 F.3d at 1140.

**2.      Motion to Dismiss for *forum non conveniens***

Defendant has moved to dismiss for *forum non* conveniens; this argument is premised on the validity of the forum-selection clause at issue. Motion pg. 5. *Forum non conveniens* is the appropriate way to enforce a valid forum-selection clause pointing to a state forum. *Atlantic Marine*, 134 S.Ct. at 580. The Court finds that Monastiero has carried his "heavy burden" to show that enforcement of the forum-selection clause contained in his employment and termination agreements "would be unreasonable and unjust" as doing so would contravene California public policy. *Murphy*, 362 F.3d at 1140. Because the forum-selection clause is not enforceable, the Court DENIES defendant's motion to dismiss for *forum non conveniens*.

8

### 3. Motion to Dismiss for Improper Venue

A defendant may move to dismiss a case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Defendant urges the Court to enforce the forum-selection clause through Rule 12(b)(3). Motion pg. 8. But the Supreme Court has specifically stated that Rule 12(b)(3) is "not [the] proper mechanism[] to enforce a forum-selection clause . . . *Atlantic Marine*, 134 S.Ct. at 580. "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id*. at 577. Therefore, the Court confines its 12(b)(3) analysis to the issue of proper venue.

The question of whether venue is wrong or improper is generally governed by 28 U.S.C. § 1391, which provides that a civil action may be brought in: 1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or 3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). If the case at issue falls within one of the three categories described in § 1391(b), venue is proper. If it does not, "venue is improper, and the case must be dismissed or transferred." *Atlantic Marine*, 134 S.Ct. at 577.

Monastiero alleges that all of the events giving rise to his claims against appMobi occurred in Northern California. Specifically, he states: he worked in appMobi's Northern California office; the work he performed on the Intel deal– the basis of his claims– occurred only in Northern California and Oregon; Intel is headquartered in Northern California; and that he lived in Northern California at all times while he was employed by appMobi. Monastiero Decl. ¶¶ 2, 3, 7. appMobi, in its removal papers, agreed with Monastiero's position. It stated that "Assignment to the San Francisco Division or Oakland Division of this Court is proper because the alleged acts and occurrences arose in the County of Alameda." Docket No. 2, ¶ 20. The Court finds that venue is proper in the Northern District of California because that is where a substantial part of the events giving rise to the claim occurred. 28

U.S.C. § 1391(b). Accordingly, the Court DENIES defendant's Rule 12(b)(3) motion to dismiss for improper venue.

### CONCLUSION

The Court finds the forum-selection clause included in plaintiff's employment and termination agreements unenforceable, and therefore DENIES defendant's motion to dismiss for *forum non conveniens*. Having found venue in the Northern District of California proper, the Court also DENIES defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3).

**IT IS SO ORDERED.**

Dated: Febrfuary 6, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

10